<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAPAG-LLOYD AKTIENGESELLSCHAFT, HAMBURG; HAPAG-LLOYD (AMERICA), LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MARLEEN LEVY i/a/t/a ALEPH INDUSTRIES, INC. a/k/a ALEPH TIRE ROAD SERVICE, <br><br> Defendant. | Case No. 2:20-cv-11155 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiffs Hapag-Lloyd Aktiengesellschaft, Hamburg and Hapag-Lloyd (America), LLC's (collectively, "Hapag-Lloyd") Motion to Dismiss Defendant Marleen Levy i/a/t/a Aleph Industries, Inc. a/k/a Aleph Tire Road Service's ("Aleph") Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 27.) Aleph opposed the Motion (ECF No. 36), and Hapag-Lloyd replied (ECF No. 37). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Hapag-Lloyd's Motion to Dismiss is **DENIED**.

**I.    BACKGROUND**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Counterclaim (ECF No. 26) as true and draws all inferences in the light most favorable to Aleph. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also

considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter arises out of claims in admiralty involving an alleged breach of service contracts for the shipment of goods. Hapag-Lloyd is a common carrier by water for the transport of goods in interstate and foreign commerce. (Compl. (ECF No. 1) ¶ 3; Answer (ECF No. 26) ¶ 33.) In 2019 and 2020, Hapag-Lloyd provided Aleph with shipping services. (ECF No. 1 ¶ 7; ECF No. 26 ¶ 7.) Aleph contracted with Hapag-Lloyd to transport shipments of its used tires from ports in the United States to various ports in India. (ECF No. 26 ¶ 33.) Hapag-Lloyd issued Aleph fourteen Bills of Lading for these shipments. (*See generally* Bills of Lading, Ex. A, (ECF No. 26-1).) The original Bills of Lading indicate the final destination of these shipments was to various ports in India. (*Id.*; ECF No. 26 ¶ 36.) According to the Bills of Lading, the dates for when the shipments departed their ports in the United States range from May 2019 to March 2020. (*See generally* ECF No. 26-1.)

While the shipments were in transit, and before reaching Hapag-Lloyd's distribution hub in South Asia, Aleph learned the government of India placed restrictions on imported used tires. (ECF No. 26 ¶ 34.) As a result, Aleph instructed Hapag-Lloyd to change the final destination of these shipments from India to Pakistan. (*Id.* ¶ 35.) Hapag-Lloyd confirmed the change in final destination to shipping ports in Pakistan. (*Id.* ¶¶ 37–38.) However, as alleged by Aleph, the shipments were not properly directed to Pakistan and were delivered to ports in India. (*Id.* ¶ 39.) The shipment containers were off-loaded in India and held in storage. (*Id.* ¶¶ 42–43.) Aleph claims it incurred storage charges and "has been unable to satisfy the orders of its customers because the tires have not, and cannot clear customs in India." (*Id.* ¶¶ 43–44.)

2

On August 24, 2020, Hapag-Lloyd filed a Complaint against Aleph claiming breach of contract for failure to make payments for the shipping services it provided. (ECF No. 1.) On August 28, 2020, the Complaint and summons were served on Aleph. (ECF No. 4.) An Answer was due on September 18, 2020, but was not filed. (ECF Nos. 4, 5.) On September 22, 2020, Hapag-Lloyd requested an entry of default, which the Clerk of the Court entered the same day. (ECF No. 5.) On September 23, 2020, the Court directed Hapag-Lloyd to move for default judgment. (ECF No. 6.) On October 6, 2020, Hapag-Lloyd moved for default judgment. (ECF No. 9.) On December 9, 2020, the Court entered an order for default judgment in favor of Hapag-Lloyd in the amount of approximately $96,240. (ECF No. 10.) On February 8, 2021, Hapag-Lloyd filed an application for Writ of Execution. (ECF No. 11.) On April 12, 2021, Aleph filed a motion to vacate default judgment and set aside judgment. (ECF Nos. 14–16.) Hapag-Lloyd opposed the motion to vacate (ECF Nos. 17–19), and Aleph replied (ECF No. 20). On June 21, 2021, the Court heard oral argument (ECF No. 22), and on June 22, 2021, the Court entered an order vacating default judgment (ECF No. 24).

On July 8, 2021, Aleph answered the Complaint and asserted a counterclaim for breach of contract (the "Counterclaim").[1] (ECF No. 26.) Specifically, Aleph claims Hapag-Lloyd breached its agreement to ship the goods to Pakistan resulting in injury to Aleph in excess of $100,000. (*Id.* ¶¶ 41, 43–45.) On July 22, 2021, Hapag-Lloyd filed a motion to dismiss Aleph's Counterclaim for failure to state a claim. (ECF No. 27.) On August 18, 2021, Aleph filed its opposition (ECF No. 36), and Hapag-Lloyd replied the same day (ECF No. 37).

---

[1] The Counterclaim asserts one unnamed cause of action arising out of Hapag-Lloyd's shipment of Aleph's goods and generally alleges a breach of agreement. (ECF No. 26.) Following a review of the Complaint, Aleph's Answer and Counterclaim, and the papers submitted in connection with this motion, the Court understands the Counterclaim to be alleging a breach of contract.

## II. LEGAL STANDARD

"In evaluating the sufficiency of counterclaims, the Court employs the familiar Rule 12(b)(6) standard." *In re Invs. Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, Civ. A. No. 09-4490, 2010 WL 2557559, at *2 (D.N.J. June 23, 2010). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-

4

defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220).

5

**III.    DECISION**

Hapag-Lloyd claims Aleph's rights are governed under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 ("COGSA"), which provides a one-year statute of limitations and is the exclusive remedy for claims arising from the carriage of goods by sea. (ECF No. 27 at 7.) Hapag-Lloyd argues Aleph's Counterclaim is time-barred by COGSA's one-year statute of limitations. (*Id.*) Hapag-Lloyd also asserts Aleph's Counterclaim is time-barred by the contractual one-year limitations period in the Bills of Lading. (*Id.* at 13.) If the Counterclaim is not statutorily time-barred under COGSA or contractually time-barred by the Bills of Lading, Hapag-Lloyd argues Aleph fails to sufficiently state a claim under COGSA upon which relief may be granted. (*Id.* at 14–15.)

Aleph claims there are issues of fact to be resolved before determining whether COGSA is the governing law in this case.[2] (ECF No. 36 at 4.) Aleph asserts COGSA's one-year statute of limitations is only implicated when goods are lost or damaged and have reached their port of final destination. (*Id.*) Because the goods were not lost or damaged and have not reached their port of final destination, Aleph argues COGSA's one-year statute of limitations does not apply. (*Id*. at 4–5.) Aleph also contends the one-year limitations period in the Bills of Lading does not apply because they only cover claims for lost or damaged goods. (*Id.* at 6.) If the Counterclaim is subject to COGSA's one-year statute of limitation, Aleph argues its Counterclaim is compulsory and, therefore, relates back to the filing of the original complaint. (*Id*. at 7.) Aleph further contends, in

---

[2] Aleph asserts whether COGSA is the governing law depends on whether this Court accepts the India Port as the final port of destination. (ECF No. 36 at 4.) For the purposes of this motion, the Court accepts the allegations in Aleph's Counterclaim as true and does not need to reach a determination on that factual issue at this time.

the alternative, it can raise its Counterclaim as a defense under the doctrine of recoupment. (*Id*. at 8.)

"COGSA regulates the carriage of goods by sea between U.S. and foreign ports." *Daewoo Int'l Corp. v. Sea-Land Orient Ltd.*, 196 F.3d 481, 484 (3d Cir. 1999) (citation omitted). "COGSA applies from 'tackle to tackle,' meaning 'the period of time when the goods are loaded on to the time when they are discharged from the ship.'" *M3 Midstream LLC v. S. Jersey Port Corp.*, 1 F. Supp. 3d 289, 294 (D.N.J. 2014) (quoting 46 U.S.C. § 1301(e))[3]; *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1300 (3d Cir. 1992). The statute governs "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C. § 30701 (Note § 13). Therefore, "COGSA applies by its terms to the bill of lading . . . because it is a contract for the carriage of goods between a foreign port and a port of the United States." *Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 659 (1st Cir. 1990); *Ferrostaal, Inc. v. M/V Sea Phx.*, 447 F.3d 212, 218 (3d Cir. 2006) ("COGSA went further, making itself applicable to 'every bill of lading . . . which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade.'") (quoting 46 U.S.C. § 30701); *EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715 (1st Cir. 1984).

"When COGSA limits liability, it preempts state law, even if the claims are phrased as common law causes of action." *Alpina Ins. Co. v. Trans Am. Trucking Serv.*, Civ. A. No. 03-740, 2004 U.S. Dist. LEXIS 14264, at *12 (S.D.N.Y. July 28, 2004); *Junior Gallery v. Neptune Orient Lines*, Civ. A. No. 94-4518, 1998 U.S. Dist. LEXIS 17354, at *12 (S.D.N.Y. Nov. 3, 1998) ("The

---

[3] While previously appearing at 46 U.S.C. §§ 1300–1315, in 2006, COGSA was reorganized and restated to appear in a note to 46 U.S.C. § 30701. *Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 101 n.2 (3d Cir. 2009). COGSA is still in force and there were no substantive changes to the statute. *Id.*; *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*, 547 F.3d 351, 354 n.2 (2d Cir. 2008).

7

application of COGSA cannot be circumvented merely by construing claims arising out of the carriage of goods by sea as common law causes of action.").

Hapag-Lloyd issued Aleph fourteen Bills of Lading to transport its cargo of used tires. COGSA governs to these Bills of Lading because they are contracts for carriage of goods from ports in the United States to various foreign ports in India. *See Norfolk N. Ry. Co. v. Kirby*, 543 U.S. 14, 29 (2004) ("COGSA governs bills of lading for the carriage of goods from the time when the goods are loaded on to the time when they are discharged from the ship.") (quotation omitted). Because the dispute between Hapag-Lloyd and Aleph involves the shipment of good by sea from the United States to foreign ports, COGSA applies to the shipments at issue that are the subject of the Bills of Lading. Having determined COGSA applies to Aleph's Counterclaim, the Court turns to: (1) whether Aleph's Counterclaim is time-barred, and if not; (2) whether Aleph adequately pleaded a claim under COGSA.

A.    **Whether Aleph's Counterclaim is Time-Barred**

1.    **The COGSA Statute of Limitations Is Implicated**

Hapag-Lloyd argues Aleph's Counterclaim must be dismissed because it is barred by COGSA's one-year statute of limitations. (ECF No. 27 at 22.) Aleph counters COGSA's one-year statute of limitations does not bar its Counterclaim because: (1) Aleph's goods were not lost or damaged; and (2) the goods were never delivered to their port of final destination. (ECF No. 36 at 4–5.)

"The COGSA statute of limitations 'is one which extinguishes the cause of action itself, and not merely the remedy.'" *Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 104 (3d Cir. 2009) (quoting *M.V.M., Inc. v. St. Paul Fire & Marine Ins. Co.*, 156 F. Supp. 879, 883 (S.D.N.Y. 1957), *rev'd on other grounds sub nom, St. Paul Fire & Marine Ins. Co. v. U.S. Lines*

*Co.*, 258 F.2d 374 (2d Cir. 1958). COGSA provides a one-year limitations period for suits to be brought against a carrier. *Styling Plastics Co. v. Neptune Orient Lines, Ltd.*, 666 F. Supp. 1406, 1409 (N.D. Cal. 1987) ("The COGSA provision expressly grants the protection of a time limitation from suit to carriers of cargo by sea."); *Foster Wheeler Energy Corp. v. Intermarine, Inc.*, Civ. A. No. 98-5106, 1999 U.S. Dist. LEXIS 18838, at *8-9 (E.D. Pa. Nov. 30, 1999) ("COGSA provides for a one year limitation period in which to bring suit.") (citing 46 U.S.C. § 30701 (Note § 3(6))). In relevant part, COGSA's one-year statute of limitations provision states:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered[.]

46 U.S.C. § 30701 (Note § 3(6)); s*ee also Associated Metals & Mineral Corp. v. Lotila*, 845 F. Supp. 257, 261 n.7 (E.D. Pa. 1993).

Here, Aleph's main contention concerns whether COGSA's one-year limitations period to file suit applies to its Counterclaim. To the extent Aleph asserts COGSA's statute of limitations never began to run because the goods were never delivered to their port of final destination, the argument is unpersuasive. First, Aleph concedes the shipments were delivered to India and all fourteen Bills of Lading identify various ports in India as the port of final destination. Second, accepting Aleph's contention Pakistan was the intended port of final destination, non-delivery does not foreclose the running of COGSA's statute of limitations. *P.T. Asuransi Parolamas v. M/V Robert E. Lee*, 1989 AMC 2885, 2891–92 (D.N.J. 1989) (finding a deviation "does not, and should not, affect the running of the statute of limitations when the insurer chooses to commence an action against the vessel for losses incurred as a result of damage to cargo"); *Mesocap Indus. v. Torm Lines*, 194 F.3d 1342, 1345 (11th Cir. 1999) (holding "an unreasonable course deviation does not nullify COGSA's one year statute of limitation"); *Bunge Edible Oil Corp. v. M/VS' Torm Rask &*

*Ft. Steele*, 949 F.2d 786, 788 (5th Cir. 1992) ("An unreasonable deviation does not prevent a carrier from invoking the one-year limitations period under COGSA."). Rather, COGSA's statute of limitations would begin to run on the date Aleph's goods "should have been delivered" to Pakistan or on the date Aleph had notice its goods were discharged and stored in India. *See Rosario v. H&M Int'l Transp. Serv.*, Civ. A. No. 06-824, 2007 U.S. Dist. LEXIS 50825, at *13 (D.N.J. July 12, 2007) (finding COGSA's "one-year statute of limitations began to run on the date when [the plaintiff's] shipment 'should have been delivered' to its employees in the Dominican Republic"); *Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, Civ. A. No. 06-37, 2009 U.S. Dist. LEXIS 91098, at *14–15 (S.D.N.Y Oct. 5, 2009) (applying COGSA's one-year statute of limitations when goods were never delivered to their port of final destination, but the plaintiff had notice its cargo had been seized).

Therefore, accepting as true Aleph's allegation Pakistan was the intended port of final destination, COGSA's one-year statute of limitations would accrue, at the latest, when notice was provided upon effective delivery.[4] *Newmann v. Mediterranean Shipping Co.*, Civ. A. No. 18-10518, 2019 U.S. Dist. LEXIS 169571, at *5 (S.D.N.Y. Sep. 30, 2019) ("[E]ffective delivery occurs—and thus, the statute of limitations begins to run—when the goods are discharged from

---

[4] To the extent Aleph relies on *Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, for the proposition that the "should have been delivered" language of COGSA is only implicated when goods are lost, Aleph misconstrues the findings in that case. 2009 U.S. Dist. LEXIS 91098. In *Russul*, the carrier was on its way from the United States to its port of final destination in Kazakhstan when the U.S. Customs and Border Protection ordered the shipment to return to United States and seized the goods. *Id.* at 4–5. The court reasoned that "it is impossible to determine the date when the goods 'should have been delivered' here since such a date was never set by the parties." *Id.* at 12. Therefore, the court held COGSA's one-year statute of limitations began to run when U.S. Customs officially notified Russul its cargo had been seized, explaining the statute of limitations began to run when Russul was put on notice its cargo was being ordered to return to the U.S. *Id.* at 14–15.

10

the vessel and notice of the discharge and a reasonable opportunity for the inspection or removal of the goods is provided." (citation and quotation marks omitted)).

Moreover, to the extent Aleph contends COGSA's limitations period applies only when goods are lost or damaged, this argument lacks merit. COGSA's one-year proscriptive period applies in suits for improper delivery of goods. *See Timco Eng'g, Inc. v. Rex & Co.*, 603 F. Supp. 925, 929 (E.D. Pa. 1985) (holding COGSA's one-year statute of limitations applies in action for mis-delivery); *Morse Electro Prods. Corp., v. S.S. Great Peace*, 437 F. Supp. 474 (D.N.J. 1977); *see also Barretto Peat, Inc.*, 896 F.2d at 660–61 ("A carrier's failure to collect the bill of lading in exchange for the goods is an improper delivery or mis-delivery which constitutes a breach of the carriage contract subject to the COGSA one-year statute of limitations."); *Hellyer v. Nippon Yesen Kaisya*, 130 F. Supp. 209, 211 (S.D.N.Y. 1955) (finding "the authorities, prior to the passage of the Carriage of Goods by Sea Act, were in accord that non-delivery or mis-delivery did not abrogate the time limitation terms of the contract of carriage") (citing *Bank of Cal., N.A. v. Int'l Mercantile Marine Co.*, 64 F.2d 97 (2nd Cir. 1933)); *Int'l Paper Co. v. Malaysia Overseas Lines, Ltd.*, 1976 A.M.C. 143, 145 (S.D.N.Y. 1985) ("It is well established that mis-delivery of marine cargo does not deprive a carrier of the benefit of the bill of lading's provisions, including a time for suit limitation."); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2d Cir. 1971); *David Crystal, Inc. v. Cunard S.S. Co.*, 339 F.2d 295 (2d Cir. 1964), *cert. denied*, 380 U.S. 976 (1965). Accordingly, Aleph's Counterclaim is subject to COGSA's one-year statute of limitations.

### 2. The Counterclaim Is Not Time-Barred

Hapag-Lloyd argues "[b]ecause the Counterclaim is governed by COGSA, and [Aleph] failed to commence its action within one year following the time of delivery of its goods or when they should have been delivered, [Aleph]'s Counterclaim must be dismissed." (ECF No. 27 at 11.)

Aleph argues if COGSA's statute of limitations was implicated, the motion papers fail to provide the accrual dates with which to assess whether the limitations period has run. (ECF No. 36 at 6.) The Court agrees with Aleph.

"Under COGSA, a shipper has one year from the date of delivery, or expected delivery, to file suit against the carrier for loss or damage to the goods[.]" *Rosario*, 2007 U.S. Dist. LEXIS 50825, at *11 (citing 46 § 30701 (Note § 3(6)); *Petroleos Mexicanos Refinacion*, 554 F.3d at 104; *Barretto Peat, Inc.,* 896 F.2d at 660; *Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 441 (6th Cir. 2019). "The COGSA statute of limitations begins to run upon delivery of the transported goods at their destination." *PPG Indus., Inc. v. Ashland Oil Co.-Thomas Petroleum Transit Div.*, 527 F.2d 502, 504 n.7 (3d Cir. 1975) (citing 46 § 30701 (Note § 3(6))).

Here, Hapag-Lloyd fails to meet its burden to establish Aleph's Counterclaim is time-barred. While Hapag-Lloyd correctly argues COGSA's one-year statute of limitations applies to Aleph's Counterclaim, Hapag-Lloyd fails to establish Aleph filed its Counterclaim beyond the one-year expiration date. Indeed, Hapag-Lloyd asserts Aleph filed its claim on June 8, 2021 but does not attest to the date of delivery. Nowhere in its brief does Hapag-Lloyd identify the date of delivery of any of the shipments that arrived at the various ports in India. Hapag-Lloyd merely contends "all shipments were made prior to July 8, 2021, more than one year before Aleph filed the Counterclaim on July 8, 2021." (ECF No. 27 at 7.) Hapag-Lloyd provided fourteen Bills of Lading all indicating when the shipments departed from their respective ports in the United States. Hapag-Lloyd, however, does not provide any Bills of Lading indicating when the shipments arrived at their ports of final destination. Without more information—specifically the date of delivery—the Court cannot assume Aleph's Counterclaim filed on July 8, 2021 was "one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C.

§ 30701 (Note § 3(6)).[5] Accordingly, Hapag-Lloyd's motion to dismiss Aleph's Counterclaim on statute of limitations grounds is **DENIED.**

B. **Whether Aleph Adequately Pled a Claim Under COGSA**

Hapag-Lloyd argues Aleph's Counterclaim must be dismissed because it fails to state a claim for relief. (ECF No. 27 at 15.) Specifically, Hapag-Lloyd argues Aleph "failed to allege that it ever gave notice, much less 'timely notice' required by COGSA, of the cargo loss or damage." (*Id.* at 14.) Aleph argues it was not required to give notice because it is not claiming any loss or damage. (ECF No. 36 at 10.) Rather, Aleph asserts its Counterclaim "relates to storage charges relative to the containers off-loaded in India and its inability to satisfy the orders of its customers because the tires [cargo] have not, and cannot clear customs in India." (*Id.*)

"COGSA affords one cause of action for lost or damaged goods which, depending on the underlying circumstances, may sound louder in either contract or tort." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Constr. Co.*, 215 F.3d 1217, 1221 (11th Cir. 2000). "Under COGSA, the owner of the cargo makes its *prima facie* case of cargo loss by proving delivery of the cargo to the vessel in good condition and short delivery by the vessel." *Sun Oil Co. v. M/T Carisle*, 771 F.2d 805, 810 (3d Cir. 1985); *Quaker Oats Co. v. M/V Torvanger*, 734 F.2d 238, 240 (5th Cir. 1984), *cert. denied*, 469 U.S. 1189 (1985). "A bill of lading serves as *prima facie* evidence that the carrier received the cargo from the shipper in good condition." *Timbauba Agricola S.A. v. M/V Cap San Raphael*, Civ. A. No. 03-5012, 2004 U.S. Dist. LEXIS 24181, at *8 (E.D. Pa. Dec. 1, 2004) (citing *Daewoo Int'l Corp.*, 196 F.3d at 484); *see also Ferrostaal, Inc. v. M/V Yvonne*, 10 F. Supp. 2d

---

[5] Because the Court determines COGSA's statute of limitations applies here, it need not address Hapag-Lloyd's alternative argument that the one-year contractual limitations period bars suit. Nonetheless, Hapag-Lloyd's alternative argument suffers the same flaw—Hapag-Lloyd never identified the date of delivery to establish the one-year statute of limitations period expired.

13

610, 613 (E.D. La. 1998) (finding a complaint for damages under COGSA must set forth specific bills of lading under which allegedly damaged cargo was shipped).

"Although most cases frame the plaintiff's burden in making a *prima facie* showing as requiring '(1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition,' . . . COGSA clearly applies to the non-delivery of goods[.]" *Saray Dokum Ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics, Inc.*, Civ. A. No. 17-7495, 2021 U.S. Dist. LEXIS 61291, at *43-44 (S.D.N.Y. Mar. 30, 2021) (quoting *Westway Coffee Corp. v. M.V. Netuno*, 675 F.2d 30, 32 (2d Cir. 1982)); *N.Y. Marine & Gen. Ins. Co. v. S/S Ming Prosperity*, 920 F. Supp. 416, 422 (S.D.N.Y. 1996) (assessing a COGSA claim for the non-delivery of goods); *Mitsui Sumitomo Ins. Co. v. Total Terminals Int'l, LLC*, Civ. A. No. 03-7077, 2004 U.S. Dist. LEXIS 27127, at *33-34 (C.D. Cal. Nov. 8, 2004) ("A *prima facie* case for loss under COGSA is established by showing that the COGSA defendants received the goods in apparent good order and condition and that they delivered the goods in a damaged condition or failed to deliver them at all.") (citing *In Re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675 (9th Cir. 1990); *Daido Line v. Thomas P. Gonzalez Corp.*, 299 F.2d 669, 671 (9th Cir. 1962)). "COGSA imposes the statutory duty on carriers to deviate only 'reasonably' from their voyage regardless of the agreement between the parties contained in their bill of lading." *Berkshire Fashions, Inc. v. The M.V. Hakusan II*, 954 F.2d 874, 883 (3d Cir. 1992); *Rainbow Navigation, Inc. v. United States*, 937 F.2d 105, 108 n.2 (3d Cir. 1991) ("Unreasonable deviations are treated as a breach of COGSA."); *Gen. Elec. Co. v. S.S. Nancy Lykes*, 706 F.2d 80 (2d Cir. 1983); *Nemeth v. Gen. S.S. Corp.*, 694 F.2d 609, 613 (9th Cir. 1982).

Here, Aleph has established the elements of a *prima facie* case against Hapag-Lloyd. Aleph provided the fourteen Bills of Lading in connection with the alleged breach. The Bills of Lading

14

are sufficient to establish Hapag-Lloyd received the cargo of used tires from Aleph in good condition. *See Timbauba Agricola S.A.*, 2004 U.S. Dist. LEXIS 24181, at *8. Aleph alleges it contracted Hapag-Lloyd to transport its cargo to ports in India, then instructed Hapag-Lloyd to change the final destination from India to Pakistan. (ECF No. 26 ¶¶ 33, 35.) "Hapag-Lloyd confirmed with Aleph that the final destination . . . would be changed . . . to the port in Karachi, Pakistan" (*id.* ¶ 37), "Hapag-Lloyd failed to properly direct Aleph's goods (*id* ¶ 39), and "Aleph has been unable to satisfy the orders of its customers" (*id.* ¶ 44). While the fourteen Bills of Lading indicate India was the port of final destination, yet Aleph's Counterclaim alleges Pakistan was the intended port of final destination, the Court is not required at this stage to adjudicate the merits of Aleph's claim. Accepting all factual allegations in Aleph's Counterclaim as true and drawing all inferences in the light most favorable to Aleph, the Counterclaim sufficiently states a plausible claim for relief at this time. *See Philips*, 515 F.3d at 228. Accordingly, Hapag-Lloyd's motion to dismiss for failure to state a claim is **DENIED.**[6]

### IV. CONCLUSION

For the reasons set forth above, Hapag-Lloyd's Motion to Dismiss Aleph's Counterclaim is **DENIED.**

*/s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
UNITED STATES DISTRICT JUDGE

Dated:  December 1, 2021

---

[6] Because the Court determined COGSA's one-year statute of limitations applies but Hapag-Lloyd has not met its burden to establish the applicable time period has expired, it need not address Hapag-Lloyd's argument regarding whether the Counterclaim is compulsory or whether the filing of the Counterclaim relates back to the filing of the Complaint.